{¶ 36} I must respectfully dissent from the majority opinion. I believe this matter should be reversed and prejudgment interest should be awarded. I believe that appellee neither rationally evaluated its risks and potential liability nor made a good-faith monetary settlement offer.
 {¶ 37} As the majority states, four factors come into play when determining whether a party has failed to make an honest effort to settle a case, and consequently, whether an award of prejudgment interest is warranted. Smith, 25 Ohio St.3d 159. In this case, there are no allegations that appellee failed to cooperate in discovery or unnecessarily delayed the proceedings. Thus, this case turns on whether appellee rationally evaluated his risks and potential liability and whether he made a good-faith settlement offer.
 {¶ 38} "A rational evaluation of the risk of exposure assumes more than simply a defendant's admission of liability. The value of a case for settlement depends on a realistic assessment of defense strategy and tangibles such as the credibility of the opinions of medical experts as to causation, evidence of permanency, the effect of the injury on the plaintiff's quality of life, and the plaintiff's credibility and sincerity as a witness." Andre v. Case Design, Inc., 154 Ohio App.3d 323,797 N.E.2d 132, 2003-Ohio-4960, at ¶ 18.
 {¶ 39} Firstly, appellee admitted liability in this case.
 {¶ 40} Secondly, appellant presented two doctors who testified that her back pain was a result of the accident. Appellee knew of this evidence and did not have any medical evidence to contradict it. (Tr. 99). Appellee also knew that appellant did not have any preexisting conditions. (Tr. 81). Dr. Yarab also testified and stated in his report that appellant will have pain and difficulty for the rest of her life as a result of the accident. (Tr. 150). Appellee received a copy of this report in February or March of 2001. (Tr. 150). Given this medical opinion that appellant's pain was permanent, neither claims adjuster opted to have an independent medical evaluation (I.M.E.) performed. (Tr. 57, 151). Nor did appellee elect to have a records review done, whereby another doctor would have reviewed Dr. Yarab's records and other documents to determine whether his treatment was reasonable, necessary, and causally related to the accident. (Tr. 151). One insurance adjuster for appellee even admitted that she did not take into consideration the fact that Dr. Yarab reported that appellant's injury was permanent. (Tr. 55-56).
 {¶ 41} Thirdly, appellee's counsel described his opinion of appellant as a witness. He described her appearance as well-groomed and attractive. (Pt. Ex. 34; Tr. 91). And he described her demeanor as very pleasant and forthcoming. (Pt. Ex. 34; Tr. 91). However, the insurance adjuster relied on the minimal damage the parties' vehicles sustained to opine that appellant might not be telling the truth. (Tr. 92).
 {¶ 42} What stands out the most in this case is that appellee had no independent medical evidence whatsoever to support its position. Appellee never took the time to have an I.M.E. performed or even to have an independent doctor review appellant's medical records. Without doing so, appellee relied on the mere non-medical opinion of claims adjusters as to the validity of appellant's doctors' diagnoses of permanent pain resulting from the accident. This was not a rational evaluation of risk and liability.
 {¶ 43} Furthermore, the evidence demonstrated that appellee did not make a good-faith settlement offer. Appellee initially offered appellant $3,800 to settle the case. He then upped his offer on the day of trial to $5,000. Appellee made this offer in spite of the fact that appellant had approximately $9,000 in medical bills. Appellee also made this offer despite the facts that both doctors would testify that appellant's injuries and pain were causally related to the accident and Dr. Yarab would testify that appellant's pain would be life-long. And again, appellee had no independent medical evidence on which to rely in support of its low settlement offers. The jury ultimately awarded appellant $103,823.
 {¶ 44} The dissent in Andrews, authored by Judge Joseph Vukovich, 7th Dist. No. 99-CA-265, sums this case up fittingly:
 {¶ 45} "We have before us a personal injury lawsuit where: (1) the negligence of the defendant is undisputed; (2) there is no evidence that the claimed medical expenses of the plaintiff were unrelated to the aforementioned negligence; (3) the top settlement offer on behalf of the defendant was thirty-five [percent] of the medical expenses; and (4) the jury verdict was more than seven times the best settlement offer. * * *.
 {¶ 46} "I would hold that the factors set out above are indicative of a bad-faith settlement posture by the defendant."
 {¶ 47} In this case, the top settlement offer was approximately 55 percent of appellant's medical expenses. However, the jury verdict was more than 20 times the settlement offer, appellee conceded liability, and appellee never obtained any independent medical opinions as to appellant's medically-supported claims of life-long pain resulting from the accident.
 {¶ 48} Based on the foregoing, I believe that appellee neither rationally evaluated its risks and potential liability nor made a good-faith monetary settlement offer. Therefore, the trial court should have awarded appellant prejudgment interest.